UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 13-495 (ES) |
| v. | : | |
| GIUSEPPE GIUDICE, | : | Hon. Esther Salas |
| a/k/a "Joe Giudice," and | | |
| TERESA GIUDICE | : | |

---

## MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO DEFENDANTS' PRETRIAL MOTIONS

---

PAUL J. FISHMAN
United States Attorney
970 Broad Street
Suite 700
Newark, New Jersey 07102

On the Brief:
Jonathan W. Romankow
Rachael A. Honig
Assistant United States Attorneys

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.    Defendants Are Not Entitled to Severance ................................................................... 3

        A.    Defendants Are Not Entitled to Severance Merely Because
            Teresa Would Prefer Not Testify Against Her Husband in a Joint Trial ....... 3

        B.    Defendants Are Not Entitled to Severance Under United States v.
            Boscia ....................................................................................................... 5

            1.    Defendants Have Not Shown That Giuseppe Actually Will
                Testify ................................................................................................. 6

            2.    Defendants Have Not Shown That Giuseppe's Testimony
                Would Be "Substantially Exculpatory" of Teresa ............................ 7

            3.    Giuseppe's Testimony Will Be Extensively Impeached ................... 9

            4.    Judicial Economy Requires A Joint Trial In This Case .................... 9

        C.    Defendants' Remaining Arguments for Severance are Unavailing ............. 10

    II.    Defendants Are Not Entitled to Separate Trials On Counts 1 Through 13
        and 14 Through 36 ............................................................................................... 11

        A.    Counts 1 Through 36 Are Properly Joined .................................................. 11

        B.    Joinder Of Counts 1 Through 36 Is Not Prejudicial ..................................... 14

    III.    Defendants Are Not Entitled to a Bill of Particulars ................................................ 16

    IV.    Defendants' Motion to Dismiss the Indictment With Prejudice Based
        on Kotteakos v. United States Must Be Denied ....................................................... 18

    V.    Defendants' Motion to Dismiss Charges in Count 1 Should Be Denied ................. 20

    VI.    Defendants' Motion to Compel the United States to Produce Brady
        and Giglio Materials Should Be Denied As Moot In Most Respects,
        and Denied As Without Basis In Law In Others .................................................... 23

VII.   Defendants' Request for Early Disclosure of Jencks Act Material is
       Without Basis ........................................................................................................... 26

VIII.  Defendants Are Not Entitled to Receive Grand Jury Transcripts ........................... 28

IX.    Defendants' Henthorn Request Should Be Denied as Moot ................................... 29

X.     The United States Will Preserve Agents' Rough Notes .......................................... 29

XI.    The United States Will Provide Notice Regarding Rule 404(b) Evidence
       As Provided in the Court's Discovery Order ......................................................... 30

XII.   A Pretrial James Hearing is Not Necessary to Determine the Admissibility of
       Coconspirator Statements ...................................................................................... 30

XIII.  Defendants Have Not Shown That There is a Need for a Hearing on the
       Authenticity and Accuracy of Tape-Recorded Evidence ......................................... 32

XIV.   Defendants' Motion to Disclose Information Regarding All Informants and
       Witnesses Should Be Denied ................................................................................. 34

XV.    The United States Will Advise the Defense of the Evidence it Intends to
       Introduce at Trial on a Timely Basis ...................................................................... 35

XVI.   The Government Submits the Defendants' Motions to Join in Each Other's
       Motions to the Sound Discretion of the Court ....................................................... 35

XVII.  Defendants Should Not Be Permitted to File Additional Pretrial Motions Without
       First Obtaining Leave of the Court ......................................................................... 36

XVIII. Defendants Are Obligated to Provide Reciprocal Discovery ................................. 36

CONCLUSION ................................................................................................................ 37

## TABLE OF AUTHORITIES

CASES

Bourjaily v. United States, 483 U.S. 171 (1987)...........................................................................31

Brady v. Maryland, 373 U.S. 83 (1963)......................................................................................23

Giglio v. United States, 405 U.S. 150 (1972)...............................................................................23

Government of the Virgin Islands v. Ventura, 476 F.2d 780 (3d Cir. 1973) .................................25

Grunewald v. United States, 353 U.S. 391 (1957).........................................................................23

Kotteakos v. United States, 892 F.2d 255 (1946) .........................................................................18

Palermo v. United States, 360 U.S. 343 (1959) ...........................................................................26

Toussie v. United States, 397 U.S. 112 (1970) .......................................................................21, 22

United States v. Addonizio, 451 F.2d 49 (3d Cir. 1971)..........................................................16, 25

United States v. Alexander, 135 F.3d 470 (7th Cir. 1998).............................................................14

United States v. Ali, 2005 WL 697482 (Mar. 24, 2005)...............................................................3, 4

United States v. Ammar, 714 F.2d 238 (3d Cir. 1983) ..................................................................31

United States v. Armocida, 515 F.2d 49 (3d Cir. 1975).................................................................17

United States v. Artates, 2012 WL 6597752 (D. Hi. Dec. 18, 2012)..............................................4

United States v. Aubin, 87 F.3d 141 (5th Cir. 1996) .....................................................................21

United States v. Bethea, 672 F.2d 407 (5th Cir. 1982) ..................................................................22

United States v. Bey, 437 F.2d 188 (3d Cir. 1971) ........................................................................32

United States v. Bissell, 954 F. Supp. 841 (D.N.J. 1996) ..................................................24, 25, 27

United States v. Blanco, 844 F.2d 344 (6th Cir. 1988)....................................................................6

United States v. Blizzard, 27 F.3d 100 (4th Cir. 1994)..................................................................22

iii

United States v. Boscia, 573 F.2d 827 (3d Cir. 1978).................................................5, 6, 7, 8, 9, 10

United States v. Broussard, 80 F.3d 1025 (5th Cir. 1996) ..........................................................6, 7

United States v. Budzanoski, 462 F.2d 443 (3d Cir. 1972)...........................................................28

United States v. Bump, 605 F.2d 548 (10th Cir. 1979)..................................................................36

United States v. Clarke, 2008 WL 2228991 (E.D.N.Y. May 28, 2008)........................................19

United States v. Cole, 449 F.2d 194 (8th Cir. 1971).....................................................................25

United States v. Continental Group, Inc., 603 F.2d 444 (3d Cir. 1979)..................................31, 32

United States v. Curry, 977 F.2d 1042 (7th Cir. 1992) .................................................................23

United States v. Dandy, 998 F.2d 1344 (6th Cir. 1993).................................................................22

United States v. DeLaurentis, 230 F.3d 659 (3d Cir. 2000)..........................................................19

United States v. Dent, 149 F.3d 180 (3d Cir. 1998).......................................................................29

United States v. DePeri, 778 F.2d 963 (3d Cir. 1985) ...................................................................31

United States v. DeVillio, 983 F.2d 1185 (2d Cir. 1993)...............................................................11

United States v. DiSalvo, 34 F.3d 1204 (3d Cir. 1994) .................................................................22

United States v. DiSantillo, 615 F.2d 128 (3d Cir. 1980) ..............................................................21

United States v. Dobson, 2003 WL 22427984 (Aug. 18, 2003) ...................................................3, 4

United States v. Dominguez, 226 F.3d 1235 (11th Cir. 2000).......................................................12

United States v. Donsky, 825 F.2d 746 (1987) ..............................................................................19

United States v. Eisenberg, 773 F. Supp. 662 (D.N.J. 1991) ........................................................17

United States v. Eufrasio, 935 F.2d 553 (3d Cir. 1991).................................................................12

United States v. Feliziani, 472 F. Supp. 1037 (E.D. Pa. 1979) .....................................................32

United States v. Ferguson, 2007 WL 196668 (D. Conn. Jan. 24, 2007)........................................18

United States v. Ferrer, 2008 WL 4890034 (M.D. Pa. Nov. 12, 2008)...........................................4

United States v. Flood, 2007 WL 1314612 (W.D.Pa. 2007), ....................................................34

United States v. Frank, 156 F.3d 332 (2d Cir. 1998) ....................................................................22

United States v. Freeman, 694 F. Supp. 190 (E.D. Va. 1988) ........................................................4

United States v. Frumento, 405 F. Supp. 23 (E.D. Pa. 1975).........................................................24

United States v. Galvan, 2006 WL 1659610 (D. Colo. June 8, 2006) .............................................4

United States v. Gambino, 926 F.2d 1355 (3d Cir. 1991).........................................................31, 32

United States v. Hemphill, 392 F.2d 45 (8th Cir. 1968) ................................................................17

United States v. Henthorn, 931 F.2d 29 (9th Cir. 1990) ................................................................29

United States v. Higgs, 713 F.2d 39 (3d Cir. 1983)...........................................................24, 25, 27

United States v. Hill, 976 F.2d 132 (3d Cir. 1992) ..................................................................26, 27

United States v. Inigo, 925 F.2d 641 (3d Cir. 1991) ........................................................................9

United States v. Irizarry, 341 F.3d 273 (3d Cir. 2003)...................................................................12

United States v. Jake, 281 F.3d 123 (3d Cir. 2002) ........................................................................23

United States v. James, 576 F.2d 1121 (5th Cir. 1987)...................................................................30

United States v. Jiles, 658 F.2d 194 (3d Cir. 1981) ........................................................................34

United States v. Karriem, 2008 WL 5118200 (D.N.J. Dec. 4, 2008)..............................................29

United States v. Kennard, 472 F.3d 851 (11th Cir. 2006)...............................................................16

United States v. Kopituk, 690 F.2d 1289 (11th Cir. 1982) ..............................................................16

United States v. Kubiak, 704 F.2d 1545 (11th Cir. 1983)...............................................................25

United States v. Lacerda, 2013 WL 3146835 (D.N.J. June 19, 2013). .............................6, 7, 9, 10

United States v. Lane, 474 U.S. 438 (1986)....................................................................................10

United States v. LaRouche, 896 F.2d 815 (4th Cir. 1990)..............................................................12

United States v. Levy, 2013 WL 787913 (S.D.N.Y. Mar. 4, 2013) ................................................7

United States v. Litman, 547 F. Supp. 645 (W.D. Pa. 1982) .......................................................24

United States v. Lore, 430 F.3d 190 (2005) ...............................................................................10

United States v. Manfredi, 628 F. Supp. 2d 608 (W.D. Pa. 2009) ................................................4

United States v. Martino, 648 F.2d 367 (5th Cir. 1981)...............................................................24

United States v. McGill, 964 F.2d 222 (3d Cir. 1992) ...........................................................12, 14

United States v. McGlory, 968 F.2d 309 (3d Cir. 1992) ..............................................................31

United States v. Mitchell, 372 F. Supp. 1239 (S.D.N.Y. 1973) ....................................................25

United States v. Moreno, 588 F.2d 490 (5th Cir.) ........................................................................34

United States v. Murphy, 569 F.2d 771 (3d Cir. 1978)...........................................................26, 27

United States v. Ochs, 842 F.2d 515 (1st Cir. 1988)....................................................................31

United States v. Pelullo, 964 F.2d 193 (3d Cir. 1992) .................................................................21

United States v. Persico, 832 F.2d 705 (2d Cir. 1987).................................................................22

United States v. Pharis, 298 F.3d 228 (3d Cir. 2002)..................................................................22

United States v. Provenzano, 334 F.2d 678 (3d Cir. 1964)...........................................................22

United States v. Reavis, 48 F.3d 763 (4th Cir. 1995)......................................................................6

United States v. Reicherter, 647 F.2d 397 (3d Cir. 1981).............................................................15

United States v. Reilly, 33 F.3d 1396 (3d Cir. 1994)...................................................................33

United States v. Rey, 923 F.2d 1217 (6th Cir. 1991) ...................................................................17

United States v. Riley, 621 F.3d 312 (3d Cir. 2010).....................................................................14

United States v. Rimell, 21 F.3d 281 (8th Cir. 1994)...................................................................13

United States v. Rinn, 586 F.2d 113 (9th Cir. 1978).....................................................................24

United States v. Rosa, 891 F.2d 1063 (3d Cir. 1989)...................................................................16

United States v. Sasso, 78 F.R.D. 292 (S.D.N.Y. 1977) ...................................................4

United States v. Sherman, 426 F. Supp. 85 (S.D.N.Y. 1976) ........................................36

United States v. Sinclair, 433 F. Supp. 1180 (D. Del. 1977) ........................................32

United States v. Smith, 776 F.2d 1104 (3d Cir. 1985) ...................................................17

United States v. Smith, 789 F.2d 196 (3d Cir. 1986) .....................................................20

United States v. Sourlis, 953 F.Supp. 568 (D.N.J. 1996) ..............................................19

United States v. Spinelli, 352 F.3d 48 (2d Cir. 2003) ......................................................6

United States v. Starks, 515 F.2d 112 (3d Cir. 1975) ...............................................32, 33

United States v. Starrett, 55 F.3d 1525 (11th Cir. 1995) ...............................................22

United States v. Starusko, 729 F.2d 256 (3d Cir. 1984) .................................................27

United States v. Todosijevic, 161 F.3d 479 (7th Cir. 1998) ...........................................13

United States v. Torres Lopez, 851 F.2d 520 (1st Cir. 1988) .........................................22

United States v. Torres, 901 F.2d 205 (2d Cir. 1990) ....................................................17

United States v. Urban, 404 F.3d 754 (3d Cir. 2005) ................................10, 15, 16, 18

United States v. Vella, 562 F.2d 275 (3d Cir. 1977) ......................................................29

United States v. Washington, 12 F.3d 1128 (D.C. Cir. 2004) ..........................................6

United States v. Westmoreland, 41 F.R.D. 419 (S.D. Ind. 1967) ..................................25

United States v. White, 737 F.3d 1121 (7th Cir. 2013) ..................................................13

United States v. Williams, 264 F.3d 561 (5th Cir. 2001) ...............................................31

United States v. Yashar, 166 F.3d 873 (7th Cir. 1999) .............................................21, 22

United States v. Zambrana, 841 F.2d 1320 (7th Cir. 1988) ...........................................31

United States v. Zolp, 659 F. Supp. 692 (D.N.J. 1987) ..................................................16

United States v. West, 877 F.2d 281 (4th Cir. 1989) ....................................................17

Zafiro v. United States, 506 U.S. 534 (1993)...................................................9, 10, 15


STATUTES AND RULES

18 U.S.C. § 2 ...........................................................................................................1
18 U.S.C. § 152(1)....................................................................................................1
18 U.S.C. § 152(2)....................................................................................................1
18 U.S.C. § 152(3)....................................................................................................1
18 U.S.C. § 157(3)....................................................................................................1
18 U.S.C. § 1014 ......................................................................................................1
18 U.S.C. § 1341 ......................................................................................................1
18 U.S.C. § 1343 ......................................................................................................1
18 U.S.C. § 1344 ......................................................................................................1
18 U.S.C. § 1349 ......................................................................................................1
18 U.S.C. § 3282 ....................................................................................................21
18 U.S.C. § 3293 ....................................................................................................21
18 U.S.C. § 3500 ....................................................................................................26
26 U.S.C. § 7203 ......................................................................................................1


Fed. R. Crim. P. 6(e) ..............................................................................................28
Fed. R. Crim. P. 8(a) .........................................................................................12, 14
Fed. R. Crim. P. 8(b) .........................................................................................11, 12
Fed. R. Crim. P. 14.....................................................................................4, 11, 14, 15, 16
Fed. R. Crim. P. 16(b) ......................................................................................36, 37
Fed. R. Crim. P. 26.2..............................................................................................27


Fed. R. Evid. 404(b) ...............................................................................................30
Fed. R. Evid. 801(d)(2)(E) .....................................................................................31
Fed.R. Evid. 901(a) ................................................................................................33

## PRELIMINARY STATEMENT

The United States submits this memorandum of law in response to the pretrial motions

submitted by defendants Giuseppe Giudice, a/k/a "Joe Giudice," and Teresa Giudice (hereinafter

referred to collectively as "Defendants," or singularly as "Giuseppe" and "Teresa").[1]   The

United States respectfully reserves its right to supplement its response by oral argument.

## BACKGROUND

On July 29, 2013, a federal grand jury sitting in Newark, New Jersey, returned a 39-count

Indictment charging Defendants with conspiracy to commit mail fraud and wire fraud, contrary

to 18 U.S.C. §§ 1341 and 1343, in violation of 18 U.S.C. § 1349; bank fraud, in violation of 18

U.S.C. §§ 1344 and 2; loan application fraud, in violation of 18 U.S.C. §§ 1014 and 2; and

bankruptcy fraud in violation of 18 U.S.C. §§ 152(1), 152(2), 152(3), 157(3), and 2.

Additionally, defendant Giuseppe Giudice was charged with willful failure to file tax returns, in

violation of 26 U.S.C. § 7203 and 18 U.S.C. § 2.

On November 18, 2013, the First Superseding Indictment ("the Indictment") was

returned, adding one count of bank fraud and one count of loan application fraud.  In sum, the

Indictment charges Defendants in Count 1 with engaging in a mail and wire fraud conspiracy

involving the submission of fraudulent mortgage and other loan applications and supporting

documents to financial institutions and other lenders in order to obtain mortgage and other loans.

The Defendants falsely represented on these loan applications and supporting documents that they

---

[1] Defendants have submitted separate briefs in support of their pretrial motions.
Inasmuch as their briefs seek the same relief, as well as the fact that Defendants move to join in
each other's motions, the Defendants' motions and briefs will be referred to collectively herein
unless otherwise noted.

1

were employed and/or receiving substantial salaries when, in fact, they were either not employed or not receiving such salaries. The Defendants also created fake documents such as tax returns, Forms W-2, and paystubs, which they then submitted to the lenders in support of these fraudulent loan applications. Counts 2 through 13 further charge Defendants with specific instances of bank and loan application fraud resulting from this unlawful agreement.

The Indictment charges in Counts 14 through 36 that, after accruing a large amount of mortgage and other debt in this fashion, Defendants engaged in bankruptcy fraud in connection with the Chapter 7 bankruptcy petition that they filed on October 29, 2009 in U.S. Bankruptcy Court in Newark. The Indictment alleges that during the course of the bankruptcy proceedings, the Defendants repeatedly concealed assets, made false oaths, and made false declarations. Among other acts of concealment and false statements, Defendants intentionally failed to disclose their ownership of certain income-producing properties as well as the income they were receiving from those properties. In many instances, these properties were the same properties that they had earlier acquired with the proceeds of false and fraudulent loans.

Finally, the Indictment also charges Giuseppe Giudice with the willful failure to file tax returns on the basis of his failure to file a federal income tax return for the years 2004 through 2008.

Trial is scheduled for April 14, 2014.

ARGUMENT

## I.    Defendants Are Not Entitled to Severance.

Defendants each move the Court for an order that their trials be held separately. They claim that they are entitled to this order for two reasons: (1) to avoid "forcing" Teresa to choose between her right to testify in her own defense and her marital privilege to refrain from testifying against her husband; and (2) to allow Giuseppe to testify in Teresa's defense – and allegedly exculpate her – while preserving his Fifth Amendment right not to incriminate himself. Defendants are wrong on both fronts, and their motions must be denied.

### A. Defendants Are Not Entitled to Severance Merely Because Teresa Would Prefer Not to Testify Against Her Husband in a Joint Trial.

Defendants assert in their briefs that Teresa "might" testify if their trials are held separately, either in her own defense (according to Teresa) or in Giuseppe's (according to Giuseppe), although they provide no details about what that testimony might be or how it might exculpate or incriminate either of them. Defendant Giuseppe Giudice's Memorandum of Law in Support of Pretrial Motions (hereinafter "GG Mem.") at 17; see also Memorandum of Law in Support of Teresa Giudice's Pretrial Motions (hereinafter "TG Mem.") at 16. Relying on two district court decisions from the Eastern District of Pennsylvania, United States v. Ali, 2005 WL 697482 (Mar. 24, 2005), and United States v. Dobson, 2003 WL 22427984 (Aug. 18, 2003), Defendants claim that this unsubstantiated and speculative[2] allegation is sufficient to justify

---

[2] The United States disputes whether Teresa actually would testify in her own defense at a separate trial and whether that testimony would actually incriminate her husband. Defendants certainly have made no record as to either. As a result, Defendants have not carried their burden of showing, as a preliminary matter, that Teresa "will be presented with an irreconcilable conflict between her right to testify in her own defense and her privilege to not testify adversely against

3

severance in this matter. What Defendants fail to mention is that every other court to have considered the issue – including two other district courts within the Third Circuit – has emphatically rejected the reasoning in Dobson and Ali, and rightly so. See United States v. Artates, 2012 WL 6597752 (D. Hi. Dec. 18, 2012) (expressly rejecting Dobson); United States v. Manfredi, 628 F. Supp. 2d 608, 647-650 (W.D. Pa. 2009) (same); United States v. Ferrer, 2008 WL 4890034, *4 (M.D. Pa. Nov. 12, 2008) (same); see also United States v. Galvan, 2006 WL 1659610 (D. Colo. June 8, 2006); United States v. Freeman, 694 F. Supp. 190 (E.D. Va. 1988); United States v. Sasso, 78 F.R.D. 292 (S.D.N.Y. 1977). This is because "the privilege against adverse spousal testimony is *not* a fundamental right that warrants severance under Rule 14." Artates, 2012 WL 6597752, at *2 (emphasis in original). Rather, "[j]ust as a criminal defendant must shed the protective cloak of the fifth amendment when taking the witness stand in his or her own defense, [Teresa] may be required to forego her privilege not to testify against her spouse – which implicates no constitutional right – in order to be able to testify on her own behalf." Sasso, 78 F.R.D. at 294. Teresa's decision as to whether to testify might be a difficult one under the circumstances, although this is only guesswork given her failure to make any proffer as to what she might say and how it might impact her husband. Even if so, however, such difficulty does not infringe upon a fundamental right, and it manifestly does not require the Court to hold two separate trials on identical offenses for the sake of preserving marital harmony. Defendants' motion on this basis thus must be denied.

---

her spouse," United States v. Manfredi, 628 F. Supp. 2d 608, 650 (W.D. Pa. 2009), let alone that severance would be the appropriate result even if such a showing could be made.

## B.  Defendants Are Not Entitled to Severance Under United States v. Boscia

Defendants' remaining argument for severance is based on United States v. Boscia, 573 F.2d 827 (3d Cir. 1978).  They claim that severance is necessary because Giuseppe currently "intends" to testify in Teresa's defense if she is tried separately, but will invoke his Fifth Amendment right to remain silent if they are tried together.  Defendants further claim that Giuseppe's testimony will exculpate Teresa.  According to a declaration by Giuseppe, if he does testify, he will state that "Teresa had no knowledge of any misrepresentation on loan applications, mortgage applications, or lines of credit;" Teresa was not aware that "various properties" were acquired in her name and that "various businesses" were owned in her name; his business partner signed Teresa's name "on numerous occasions without her knowledge and authorization;" his attorney signed Teresa's name "on numerous occasions" without her knowledge and authorization;" and that he himself "signed Teresa's name on numerous occasions without her knowledge" (although apparently not without her authorization).  (Jan. 10, 2014 Declaration of Giuseppe Giudice, attached to TG Mem. at Appendix, Da7 - Da9.) Giuseppe also declares that he will testify that "other individuals, including bank representatives, were aware that Teresa had not signed various documents" such as loan applications, mortgage applications, lines of credit, and HUD-1 settlement statements.  Id.

Boscia holds that where a defendant seeks severance on the grounds that her co-defendant will provide exculpatory testimony if the trials are held separately, the Court must consider four factors in deciding whether to grant relief: (1) the likelihood of the co-defendant testifying; (2) the degree to which such testimony would be exculpatory; (3) the degree to which the testifying co-defendant could be impeached; and (4) judicial economy.  Id. at 832.  The co-

5

defendant's testimony must be shown to be "substantially exculpatory" to justify severance. See United States v. Washington, 12 F.3d 1128, 1133 (D.C. Cir. 2004). As a result, as Judge Noel L. Hillman recently observed in denying a similar motion, "severance pursuant to the Boscia factors is an extremely rare occurrence within this district." United States v. Lacerda, 2013 WL 3146835, *2 (D.N.J. June 19, 2013). In fact, research revealed no case in which such a motion has been granted.

### 1. Defendants Have Not Shown That Giuseppe Actually Will Testify.

The first Boscia factor requires the Court to determine how likely it is that Giuseppe will in fact testify in Teresa's defense if separate trials are held. Giuseppe's declaration states in conclusory fashion that "if the trials are severed, I intend to testify at the trial of my wife, Teresa." The declaration is conspicuously silent, however, as to whether his intention holds regardless of which trial is held first and regardless of its outcome. If Giuseppe will only testify at Teresa's trial if he is tried first, this conditional offer does not satisfy the first Boscia factor. See Lacerda, 2013 WL 3146835, at *3; United States v. Spinelli, 352 F.3d 48, 56 (2d Cir. 2003); United States v. Broussard, 80 F.3d 1025, 1038 (5th Cir. 1996); United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995); United States v. Blanco, 844 F.2d 344, 352-53 (6th Cir. 1988). Moreover, as Judge Hillman recognized in Lacerda, a defendant's pretrial assertion that he will testify at a subsequent trial of his spouse is often subject to change based on the outcome of his own trial. "Although [the husband] may presently aver that he would testify on [the wife's] behalf at a separate trial, it remains a very real possibility that he may subsequently elect not to do so in light of a potential appeal, the chance if convicted that his testimony will have sentencing and sentencing guidelines ramifications in his own case, the chance of facing

6

additional criminal liability, or being subject to cross-examination about his own criminal activity and knowledge of his wife's actions in furtherance of the fraudulent scheme." Lacerda, 2013 WL 3146835, at *3.  Indeed, after filing the instant motion, Giuseppe's attorney reportedly equivocated about whether Giuseppe would actually testify, telling a reporter for the Star-Ledger, "We haven't gone to trial yet. We haven't even gotten full discovery yet.  However it's our position that he wouldn't testify during the trial on his behalf, but in a separate trial he would testify for his wife."  Vicki Hyman, "'Real Housewives' Star Joe Giudice Won't Testify, Wants Separate Trial to 'Exonerate' Teresa," Star-Ledger (Jan. 22, 2014).  Conditional offers to testify are insufficient under Boscia to carry Defendants' burden of proving that Giuseppe not merely "intends to" but in fact *will* testify in Teresa's defense if her trial is held separately.  This factor, therefore, weighs against granting Defendants' motion.

### 2.   Defendants Have Not Shown That Giuseppe's Testimony Would Be "Substantially Exculpatory" of Teresa.

The second Boscia factor requires the Court to determine the degree to which Giuseppe's proffered testimony would exculpate Teresa.  Here, Defendants fall well short of the mark.  Giuseppe's blanket statement that Teresa "had no knowledge of any misrepresentation on loan applications, mortgage applications, or lines of credit" is an inadmissible opinion regarding her state of mind and therefore not exculpatory at all.  See Broussard, 80 F.3d at 1037-38 (rejecting claim that district court erred in failing to order separate trials for husband and wife; holding that "[w]ithout specific and exonerative facts to support [the husband's] opinion, his proffer of testimony amounts to little more than a bare, conclusory allegation that [the wife] was unaware of the content of the messages"); United States v. Levy, 2013 WL 787913, *2 (S.D.N.Y. Mar. 4, 2013) (denying request for separate trials of husband and wife where husband stated intent to

testify that wife lacked knowledge; finding that "much of Mr. Levy's proposed testimony deals with Mrs. Levy's mental state and would otherwise be inadmissible"). The same is true of Giuseppe's proposed testimony that Teresa was not aware that "various properties" and "various businesses" had been acquired and titled in her name. These assertions are also so vague – which properties? which businesses? – that it is impossible to discern whether they have any relevance to the case at all.

Giuseppe's offer to testify that his business partner and attorney signed Teresa's name to certain unidentified documents "without her knowledge and authorization" and that he himself signed her name to other, also unidentified, documents "without her knowledge" is only minimally exculpatory, if at all. As an initial matter, Giuseppe fails to state that any of these documents are related to the conduct charged in the Indictment. Beyond that, and more importantly, it has long been known to both the government and the defense that in some instances, the Giudices obtained fraudulent mortgage loans in Teresa's name by having someone else sign for Teresa at closing – either Giuseppe, with Teresa's authorization, or his business partner or attorney, with Giuseppe's authorization. However, it is also true that the Giudices obtained many other fraudulent mortgage loans with Teresa's direct participation, including instances in which Teresa signed the fraudulent loan documents herself, and it is on the basis of those loans that she is charged with conspiracy to commit mail and wire fraud and loan application fraud in the Indictment. Giuseppe's proposed testimony as to the instances in which Teresa did not sign her own name to documents is minimally probative of her knowledge and intent in the situations in which she did. His testimony, therefore, is not "substantially exculpatory" of Teresa and fails to justify an order of separate trials under Boscia.

8

### 3.  Giuseppe's Testimony Will Be Extensively Impeached.

The third <u>Boscia</u> factor that the Court must consider is the degree to which the testifying co-defendant's testimony will be impeached. If any co-defendant's sworn testimony can be impeached, it is Giuseppe Giudice's. He has provided false testimony under oath on multiple occasions, one of which resulted in a written finding by U.S. Bankruptcy Judge Morris Stern that Giuseppe's testimony was "thoroughly unconvincing" and that he was "unbounded as a prevaricator" with a "say-anything, do-anything" attitude on the stand. (Judge Stern went on to hold that the "extraordinary web of lies and misrepresentations woven by Giudice to implement and cover his misconduct reflects on his approach to business matters, and suggests his disregard for legal restraints which would bind others.") If he is tried first in this matter and convicted, his newly-minted felony convictions for fraud and false oaths will provide additional bases for cross-examination. And of course, his marriage to Teresa and status as the father of her four children "provides grounds for impeachment in the severance context because these relationships alone suggest bias and a motive to fabricate." <u>Lacerda</u>, 2013 WL 3146835, at *4 (citation and punctuation omitted). The third factor thus weighs heavily against granting severance in this case.

### 4.  Judicial Economy Requires A Joint Trial In This Case.

Finally, judicial economy militates strongly in favor of a joint trial in this case. The Supreme Court has long recognized "the fundamental principle that the federal system prefers joint trials of defendants who are indicted together." <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993). This is particularly true where, as here, defendants are charged as participants in the same conspiracy. <u>See</u> <u>United States v. Inigo</u>, 925 F.2d 641, 656 (3d Cir. 1991) ("It is . . . customary to try persons charged as co-conspirators together, and severance of a coconspirator's

trial is required only for compelling reasons."). Trying the Defendants together will "conserve

[government] funds, diminish inconvenience to witnesses and public authorities, and avoid

delays in bringing those accused of crime to trial." United States v. Lane, 474 U.S. 438, 449

(1986). In contrast, holding multiple trials "would be burdensome and wasteful for the

Government in putting on and proving its case." Lacerda, 2013 WL 3146835, at *5. The fourth

and final Boscia factor, in combination with the other factors, discussed above, thus requires that

the Court deny Defendants' severance motion.

### C. Defendants' Remaining Arguments for Severance are Unavailing.

Defendants make two other arguments in favor of severance: Teresa claims that she is

entitled to a separate trial because the evidence against Giuseppe is stronger than that against her,

and Giuseppe argues that he is entitled to a separate trial because he may be "prejudiced" – in

some unspecified way – from the admission at trial of Teresa's sworn testimony in the

bankruptcy proceedings. These arguments can be dispensed with quickly. The Third Circuit

"long [has] held that a defendant is not entitled to a severance because evidence against a co-

defendant is more damaging than the evidence against the moving party." United States v. Lore,

430 F.3d 190, 205 (2005) (citation and punctuation omitted). Moreover, even the threat of

"spillover," which exists when evidence is admissible as to one defendant and not another, is not

sufficient to warrant separate trials. "Rather, some exacerbating circumstances, such as the

jury's inability to compartmentalize the evidence, are required." United States v. Urban, 404

F.3d 754, 776 (3d Cir. 2005) (citation and punctuation omitted). Teresa and Giudice appear to

share the hope that each might have "a better chance of acquittal in [a] separate trial[]." Zafiro,

506 U.S. at 540. This, however, is not a sufficient basis to sever two defendants who are both

10

charged as participants in the same conspiracy and fraudulent scheme.  See id.; United States v. DeVillio, 983 F.2d 1185, 1192 (2d Cir. 1993).  Their motions thus must be denied.

## II.  Defendants Are Not Entitled to Separate Trials On Counts 1 Through 13 and 14 Through 36.

Not content with seeking two separate trials in this case, Defendants ask the Court to hold four, or perhaps five.  Defendants move the Court for an order severing Counts 1 through 13, which charge Defendants with conspiracy to commit mail and wire fraud and with loan application fraud in connection with their mortgage fraud scheme, from Counts 14 through 36, which charge Defendants with various bankruptcy fraud offenses.  (Giuseppe also is charged in Counts 37 through 41 of the Indictment, which charge him with willful failure to file tax returns; he does not explain which group of the preceding counts he proposes to join with these counts or whether he is instead seeking yet another separate trial on the tax counts as well.)

Defendants claim both that the counts are misjoined under Federal Rule of Criminal Procedure 8(b) and that, even if properly joined, such joinder is prejudicial and the counts should be severed pursuant to Federal Rule of Criminal Procedure 14.  Defendants are incorrect, and their motion must be denied.

### A.  Counts 1 Through 36 Are Properly Joined.

Federal Rule of Criminal Procedure 8(b) permits the joinder in an indictment of two or more defendants if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts and transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count." Courts have defined the term "transaction" "very flexibly, as implying a connection of logical relationship rather than immediateness."  United States v. LaRouche, 896

11

F.2d 815, 830 n.5 (4th Cir. 1990). "Regardless of whether both sets of charges involve the presentation of the same evidence, the fact that one illegal activity provides the impetus for the other illegal activity is sufficient to constitute a common scheme for joinder purposes." United States v. Dominguez, 226 F.3d 1235, 1239 (11th Cir. 2000).[3] The connection between the two offenses need not be explicitly alleged in the indictment. See id. at 1240-42; United States v. McGill, 964 F.2d 222, 242 (3d Cir. 1992). Rather – and directly contrary to the claims made by Defendants in their briefs – the government may show the logical relationship between the counts through a proffer of evidence in response to a motion for separate trials. See McGill, 964 F.2d at 242 ("Trial judges may look beyond the face of the indictment to determine proper joinder in limited circumstances. Where representations made in pretrial documents other than the indictment clarify factual connections between the counts, reference to those documents is permitted."). Defendants cite United States v. Irizarry, 341 F.3d 273, 287 n.4 (3d Cir. 2003), and United States v. Eufrasio, 935 F.2d 553, 567 (3d Cir. 1991), for the supposed principle that "the trial court must only look to the indictment to determine whether the counts are properly joined." (TG Mem. at 19; GG Mem. at 22.) Neither of these cases holds any such thing, however, and as McGill makes clear, the opposite is true.[4]

---

[3] Dominguez considered the propriety of joinder pursuant to Rule 8(a), and as set forth above, joinder in this case is governed by Rule 8(b). However, Rule 8(a) differs from Rule 8(b) only in that it provides an additional basis for joinder of offenses against a single defendant: joinder in such a case may be proper if the offenses charged "are of the same or similar character." Cases construing the "same act or transaction" basis for joinder present in Rule 8(a) employ the same analysis applied to joinder under Rule 8(b), and therefore are equally applicable under either section of the Rule. See United States v. Eufrasio, 935 F.2d 553, 570 n.20 (3d Cir. 1991).

[4] The cited pages in Irizarry and Eufrasio instead include a discussion as to whether Rule 8(b) or the more permissive Rule 8(a) should apply to the joinder of counts against a single defendant in a multi-defendant case. As set forth above, the United States does not dispute that the Third Circuit applies Rule 8(b) under such circumstances.

Under this standard, the mortgage fraud and bankruptcy fraud counts are properly joined. Counts 1 through 13 allege that Defendants fraudulently incurred large amounts of loan debt by making false statements on loan applications and supporting documents. Counts 14 through 36 allege that Defendants then attempted to fraudulently discharge that debt by making additional false statements during the bankruptcy process. Furthermore, in many cases, the properties the Defendants acquired with fraudulent loans were the same properties that Defendants either failed to disclose their ownership of or concealed income from during the bankruptcy process. Because the conduct charged in Counts 1 through 13 provided the impetus for the conduct charged in Counts 14 through 36, and because there is factual overlap among the counts, therefore, the counts are properly joined. See United States v. White, 737 F.3d 1121, 1132-33 (7th Cir. 2013) (finding mortgage fraud and bankruptcy fraud counts to be properly joined, in part because the fraudulent bankruptcy filings prevented creditors from recovering the proceeds of the mortgage fraud); United States v. Todosijevic, 161 F.3d 479, 484 (7th Cir. 1998) (finding loan fraud and bankruptcy fraud counts to be properly joined because "the defendants, through the use of false statements and false tax returns, induced [the victim] to loan them money, and then filed a fraudulent bankruptcy petition in an effort to avoid having to pay it back"); United States v. Rimell, 21 F.3d 281, 289 (8th Cir. 1994) (finding loan fraud and bankruptcy fraud counts properly joined because "[t]here was overlapping evidence between the bank fraud and bankruptcy fraud counts. The conduct charged in the bankruptcy fraud counts followed and was a result of the conduct at issue in the bankruptcy fraud counts.").

The relationship between the mortgage fraud counts and the bankruptcy fraud counts in this case is analogous to the relationship between fraud counts and tax counts in cases (like this one) in which the tax counts are based at least in part on a failure to report the proceeds of the

13

fraud.  In both situations, the defendant obtains money by fraud that he then attempts to fraudulently shield from collection, in the former instance by his creditors and in the latter instance by the Internal Revenue Service.  The Third Circuit repeatedly has held that fraud and tax counts are properly joined under such circumstances, even if the charges otherwise have little evidentiary commonality.  See United States v. Riley, 621 F.3d 312, 334 (3d Cir. 2010) ("In this case, it was Riley's failure to report income earned from the land fraud scheme that led to her [t]ax [f]raud [c]ounts.  Because the tax evasion arose directly from the land fraud proceeds, it was in the interest of judicial efficiency to join these claims."); McGill, 964 F.2d at 241. Likewise, the debt that led Defendants to file their fraudulent bankruptcy petition in this case was the debt that they fraudulently accrued by making false statements on loan applications.  The bankruptcy fraud arose directly from the mortgage fraud, and both groups of counts are properly joined for trial.[5]

### B.  Joinder Of Counts 1 Through 36 Is Not Prejudicial.

Defendants move in the alternative for a discretionary order of the Court ordering separate trials pursuant to Federal Rule of Criminal Procedure 14. Rule 14 is titled "Prejudicial Joinder," and provides that if the joinder of offenses or defendants appears to prejudice a defendant, "the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  As set forth above, the Supreme Court has held that

---

[5] The United States notes that if the Court grants Defendants' severance motion and Giuseppe and Teresa are tried separately, the case for joinder of counts becomes even stronger. Because each case will be a single-defendant case, joinder will be governed by Rule 8(a), which permits offenses to be joined if they are of the "same or similar character."  Because Counts 1 through 13 and 14 through 36 all charge fraud  involving false statements and false documents, they are properly joined under Rule 8(a).  See, e.g., United States v. Alexander, 135 F.3d 470 (7th Cir. 1998) (mail and bankruptcy fraud counts of "same or similar character" and therefore properly joined because both charged falsification of documents).

because Rule 8 joinder promotes judicial economy and efficiency and avoids the burden of multiple trials, a defendant's request for relief under Rule 14 should be granted only if the court determines that a "serious risk" of prejudice exists. Zafiro, 506 U.S. at 539-40. In that regard, "[m]ere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chances of acquittal. Rather, he must demonstrate clear and substantial prejudice resulting in a manifestly unfair trial." United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981).

Defendants are entirely non-specific in their claims of prejudice allegedly arising from the joinder of Counts 1 through 13 with Counts 14 through 26, claiming only that joinder "would unduly confuse the jury attempting to dissect entirely unrelated charges." (TG Mem. at 22; GG Mem. at 24.) Teresa adds the similarly broad assertion that because Giuseppe alone is charged in the tax counts, "Teresa will not only be forced to stand trial involving two entirely unrelated sets of Counts, but she would also be required to defend herself in a trial involving a third set of Counts with a substantially different set of proofs unrelated to her." (TG Mem. at 22.) Defendants' vague allegations regarding "undue confusion" are precisely the kind of "mere allegations of prejudice" that Reicherter and other cases hold to be insufficient to justify separate trials. Moreover, the mere fact that Teresa is not charged in the tax counts does not make joinder prejudicial in this case. The Court undoubtedly will give a cautionary instruction to the jury that informs jurors that they should consider the evidence as to each count and each defendant separately. This is a more than adequate safeguard against the specter of prejudicial spillover. See Urban, 404 F.3d at 776 (holding that jury could segregate evidence against one defendant from evidence against co-defendants in light of chart that showed which defendants were involved in which specific conduct and cautionary instruction given by court); United States v.

15

Kennard, 472 F.3d 851, 859 (11th Cir. 2006); ("[A] court's cautionary instructions ordinarily

will mitigate the potential 'spillover effect' of evidence of a co-defendant's guilt."); United

States v. Kopituk, 690 F.2d 1289, 1320 (11th Cir. 1982) (describing cautionary instruction as the

"most efficacious tool" against spillover); United States v. Zolp, 659 F. Supp. 692, 701 (D.N.J.

1987) (holding that properly instructed jury could segregate evidence regarding defendants not

named in certain counts). Defendants have shown no "serious risk" of prejudice arising from

joinder in this case, and thus no basis for a Rule 14 order for separate trials. Defendants' motion

must be denied.

## III.   Defendants Are Not Entitled to a Bill of Particulars.

Defendants move for a bill of particulars, which the Third Circuit has described as a

"formal, detailed statement of the claims or charges brought by a . . . prosecutor." United States

v. Urban, 404 F.3d 754, 771 (3d Cir. 2005). In light of the detail in the Indictment itself and the

wealth of information available through discovery, however, Defendants' motion should be

denied.

"The purpose of a bill of particulars is 'to inform the defendant of the nature of the

charges brought against him, to adequately prepare his defense, to avoid surprise during the trial

and to protect him against a second prosecution for an inadequately described offense.'" Id. at

772 (quoting United States v. Addonizio, 451 F.2d 49, 63-64 (3d Cir. 1971)). A bill of

particulars should only be ordered where the indictment itself "fails to perform these functions,

and thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to

lead to prejudicial surprise at trial.'" Id. (quoting United States v. Rosa, 891 F.2d 1063, 1066 (3d

Cir. 1989)). A bill of particulars is not an investigative vehicle for the defense, nor is it a

16

discovery tool to obtain disclosure of the government's case prior to trial. See United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) ("Acquisition of evidentiary detail is not the function of the bill of particulars.") (quoting United States v. Hemphill, 392 F.2d 45, 49 (8th Cir. 1968)). Rather, the bill is "intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985). If the defendant can derive this information from the indictment and the discovery provided, there is no need for the bill to issue. See United States v. Eisenberg, 773 F. Supp. 662, 689-92 (D.N.J. 1991).

Defendants' request for a bill of particulars is in fact a demand for painstaking evidentiary detail regarding the government's case in a few general areas. First, Defendants ask the Court to compel the government to provide the names of any individuals who may have served as Defendants' unindicted co-conspirators in this case. Second, Defendants ask the government to identify "which documents" were sent to lenders in furtherance of the conspiracy, bank fraud, and loan application fraud offenses. Third, Defendants ask for information about what income Defendants received and concealed from the Bankruptcy Court, and also for information about "why" various submissions to the Bankruptcy Court were not true and correct. Fourth, Giuseppe asks the government to inform him "who allegedly signed each document relevant to the case." (GG Mem. at 34.)

As an initial matter, there is no requirement that the government spell out each and every "other" with whom Defendants conspired over the period of time alleged in the Indictment, particularly as the identify of some of these individuals may be unknown. See United States v. Armocida, 515 F.2d 49, 54 (3d Cir. 1975); United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991); Torres, 901 F.2d at 233-34; United States v.West, 877 F.2d 281, 293 (4th Cir. 1989).

17

Additionally, all of the remaining information that Defendants seek can be ascertained from the Indictment itself and from the discovery that the government already has provided. This case, like most fraud cases, is a document case, and Defendants have had access to inspect and copy the discovery since August 2013, and therefore they have had at their disposal for some time all of the evidence that will be used by the government to prove its case, including each and every false and fraudulent document alleged in the Indictment. Their focus will be refined still further when the government discloses its marked trial exhibits, which will take place no later than 30 days prior to trial. While it is true that the government cannot "dump" a mountain of documents on a defendant and claim that this is an adequate substitute for a bill of particulars where one would otherwise be required, such wholesale "dumping" did not take place in this case. See United States v. Ferguson, 2007 WL 196668, *3 (D. Conn. Jan. 24, 2007) (holding that no bill of particulars was required where indictment was detailed and government identified most relevant documents, or "hot docs," from within 3.5 million page production). The Defendants can readily determine all of the information which they seek without the need for a bill of particulars. Access to discovery "further weakens the case for a bill of particulars," Urban, 404 F.3d at 772, and Defendants' motion in this regard should be denied.

## IV. Defendants' Motion to Dismiss the Indictment With Prejudice Based on Kotteakos v. United States Must Be Denied.

Defendants move the Court for an order dismissing the entire Indictment – with prejudice, no less – based a claim that a single count, Count 1, "creates impermissible 'variances' by alleging a single conspiracy and offering multiple, independently operating conspiracies at trial in violation of Kotteakos v. United States, 892 F.2d 255, 258 (1946)." (GG

Mem. at 35.)  Defendants are correct in the first instance; Count 1 does indeed allege a single

conspiracy on the part of the Defendants to commit mail and wire fraud.  There has been no trial

in this case, however, and there is therefore absolutely no basis for their corresponding claim that

the government has created a "variance" from that allegation by offering evidence of "multiple,

independently operating conspiracies at trial."   Their motion thus must be denied, as unripe at

the very least.

        As common sense would dictate, a Kotteakos claim that the evidence at trial has varied

from the allegations in the indictment exists, if at all, after there has been a trial.  The Third

Circuit held in United States v. Donsky, 825 F.2d 746, 751-52 (1987), that it is error for a district

court to grant a pre- or (even mid-) trial motion to dismiss an indictment that charges a single

conspiracy "unless the prosecution has made a clear and deliberate concession which must

necessarily prevent a conviction" on a single conspiracy count.  See also United States v.

DeLaurentis, 230 F.3d 659, 661 (3d Cir. 2000) ("Unless there is a stipulated record, or unless

immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible

vehicle for addressing the sufficiency of the government's evidence.").  In this case, the

government has alleged a single conspiracy in Count 1, and the government is entitled to prove

it.  See Donsky, 825 F.2d at 754 (holding that even though the government made certain

"concessions" in its opening statement, district court erred in granting motion to dismiss on

Kotteakos grounds because those concessions failed to "establish as a matter of law that a single

conspiracy could not be proven"); United States v. Sourlis, 953 F.Supp. 568, 573 (D.N.J. 1996)

(Ackerman, J.) (recognizing that it is premature to take up Kotteakos arguments pre-trial);

United States v. Clarke, 2008 WL 2228991, *9 (E.D.N.Y. May 28, 2008) ("The Kotteakos

decision provides no support . . . for the notion that the potential for a variance of proof at trial

serves as grounds for dismissing an indictment before trial."). Defendants' motion must be denied based on prematurity alone.

It is worth noting, however, that Defendants' claim that the facts of this case show ten separate conspiracies is completely misplaced. Count 1 of the Indictment alleges an overarching conspiracy between Giuseppe and Teresa to deceive lenders, executed through a number of individual mortgage loans obtained from a number of different victims. That the victims in this case varied does not mean Giuseppe and Teresa entered into ten different conspiracies with one another. Instead, they entered into a single conspiracy that, over time, was executed through various means and caused harm to various entities. This is perfectly consistent with the law of conspiracy under <u>Kotteakos</u> and its progeny. <u>See</u>, <u>e.g.</u>, <u>United States v. Smith</u>, 789 F.2d 196, 200-201 (3d Cir. 1986). Moreover, Defendants offer no support for the notion that a defect in Count 1, when and if one ever becomes apparent, necessitates dismissal with prejudice of the entire Indictment. Whenever raised, therefore, Defendants' motion will be baseless and their motion must be denied.

**V.      Defendants' Motion to Dismiss "Charges in" Count 1 Should Be Denied.**

Defendants ask this Court to "dismiss any charge in Count I of the superseding indictment which relates to non-financial institutions." (GG Mem. at 40.) Count 1 of the Indictment contains only one "charge," however, a charge of conspiracy to commit mail and wire fraud. What defendants appear to be asking is that the Court strike certain *factual allegations* within that charge, specifically, any allegation relating to a loan fraudulently obtained from a non-financial institution lender prior to September 2008. Defendants claim that since the statute of limitations for mail and wire fraud is only five years if the offense does not affect a financial institution, the factual allegations in Count I regarding the September 2001 HomeComings loan,

20

the June 2004 Eastern American loan, and the March 2005 Alterna loan should be "dismissed." Defendants' argument fails.

Under 18 U.S.C. § 3282, an indictment for most non-capital offenses must be brought within five years "after such offense shall have been committed."[6] An offense is "committed" for purposes of § 3282 when it is "completed..., that is, when each element of that offense has occurred." United States v. Yashar, 166 F.3d 873, 875 (7th Cir. 1999).[7]

Although an offense is generally committed when it has been completed, i.e., when all of the elements are present and the offense can be prosecuted, there is an exception for continuing offenses. For those, the limitations period does not begin to run until the offense is concluded, even if all of the elements were present and the offense could have been prosecuted at an earlier date. An offense is a continuing offense if "the explicit language of the substantive statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing offense." Toussie v. United States, 397 U.S. 112, 115 (1970); United States v. DiSantillo, 615 F.2d 128 (3d Cir. 1980).

---

[6] The statute provides:

> (a) In general.--Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

18 U.S.C. § 3282.

[7] Federal indictments charging mail or wire fraud, or RICO offenses where mail fraud is a predicate offense that "affects" a "financial institution" must be brought within ten years of completion of the scheme to defraud. 18 U.S.C. § 3293(2) and (3). A fraud that affects the wholly owned subsidiary of a financial institution ipso facto "affects" the parent financial institution, and is governed by the ten year statute of limitations established by § 3293(2). United States v. Pelullo, 964 F.2d 193, 214-17 (3d Cir. 1992), see also United States v. Bouyea, 152 F.3d 192, 195 (2d Cir. 1998); United States v. Aubin, 87 F.3d 141, 147 (5th Cir. 1996).

21

"The classic example of a continuing offense is conspiracy." Yashar, 166 F.3d at 875.[8]

Other continuing offenses include: extortionate debt collection, United States v. DiSalvo, 34 F.3d 1204, 1217-1218 (3d Cir. 1994); concealing and retaining stolen government property, United States v. Blizzard, 27 F.3d 100 (4th Cir. 1994); tax evasion, United States v. Dandy, 998 F.2d 1344 (6th Cir. 1993); extortion, United States v. Provenzano, 334 F.2d 678, 684-685 (3d Cir. 1964), escape and kidnaping, Yashar, 166 F.3d at 875; bigamy, nuisance, and non-support, Toussie, 397 U.S. at 234 (White, J., dissenting); and conducting the affairs of an enterprise through a pattern of racketeering activity (RICO).[9] Mail and wire fraud, by contrast, are not continuing offenses. For an individual charge of mail fraud, for example, the offense is completed when a defendant "places, deposits, causes to be deposited, takes, or receives mail, or knowingly causes mail to be delivered, as part of the execution of a scheme to defraud." United States v. Pharis, 298 F.3d 228, 234 n. 3 (3d Cir. 2002) (citation and quotation marks omitted).

For conspiracy charges, including a charge of conspiracy to commit mail and wire fraud, however, the statute of limitations is measured from the last overt act taken in furtherance of the conspiracy's objectives, even if that act was not charged in the indictment. United States v. Frank, 156 F.3d 332, 338-339 (2d Cir. 1998). The government is not required to prove any overt acts with regard to a particular defendant within the limitations period, but only that the

---

[8]  A conspiracy is a continuing offense because "each day's acts bring a renewed threat of the substantial evil Congress sought to prevent." Toussie, 397 U.S. at 122.

[9]  A prosecution for conducting the affairs of an enterprise though a pattern of racketeering activity may be brought within five years of the last act of racketeering. United States v. Starrett, 55 F.3d 1525, 1544-1545 (11th Cir. 1995); United States v. Torres Lopez, 851 F.2d 520, 522-525 (1st Cir. 1988); United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987); United States v. Bethea, 672 F.2d 407, 419 (5th Cir. 1982). This is so even if there were two or more racketeering acts and therefore a prosecutable RICO case outside the limitations period. United States v. Starrett, supra; United States v. Torres Lopez, supra.

conspiracy existed into the limitations period and that the defendants did not withdraw before that period. Grunewald v. United States, 353 U.S. 391, 396- 97 (1957); United States v. Curry, 977 F.2d 1042, 1058 (7th Cir. 1992).

As Count 1 of the Indictment details, and contrary to Defendants' claims otherwise, this case involved a continuing conspiracy which lasted from at least in or about September 2001 through at least in or about September 2008. Therefore, the statute of limitations for charging the Defendants did not begin running until September 2008, with any applicable statute of limitations not expiring until September 2013, at the earliest. Defendants were charged by indictment in Count 1 on July 29, 2013. Therefore, the Defendants were charged well within the statute of limitations. Moreover, because the conspiracy charge was brought within five years of the last act in furtherance of the conspiracy's objectives, the Indictment properly charges, and a jury may consider, "each and all of a defendant's actions in furtherance of the conspiracy," even if those actions occurred before the five-year window created by the statute of limitations. United States v. Jake, 281 F.3d 123, 129 n.6 (3d Cir. 2002). Accordingly, Defendants' motion to "dismiss" factual allegations in Count 1 that relate to loans occurring prior to July 2008 should be denied.

## VI. Defendant's Motion to Compel the United States to Produce Brady and Giglio Materials Should Be Denied As Moot in Most Respects, and Denied as Without Basis in Law in Others.

Defendants request that the Court order the government to immediately disclose Brady material (exculpatory evidence, see Brady v. Maryland, 373 U.S. 83, 87 (1963)) and Giglio material (impeachment evidence, see Giglio v. United States, 405 U.S. 150, 154 (1972)) to the defense. The United States already has provided all Brady material in its possession, and represents to the Court that it is aware of, and will abide by, its continuing obligation of

23

disclosure. As for Giglio material, the United States proposes to disclose it three days prior to the testimony of each witness. Accordingly this aspect of Defendants' motion should be denied as moot. See, e.g., United States v. Bissell, 954 F. Supp. 841, 868-70 (D.N.J. 1996).

The United States is well aware of its obligation to disclose, at the appropriate time, information bearing directly on the credibility of its major witnesses. Defendants' demands for early pretrial disclosure of such impeachment materials, however, are contrary to established law in this Circuit. Where Giglio material can only be used to challenge the credibility of government witnesses, the case law is clear that a defendant's right to a fair trial does not require pretrial production. In United States v. Higgs, 713 F.2d 39, 42 (3d Cir. 1983), cited by Defendants, the Third Circuit held that disclosure of witness credibility evidence at the time of trial is more than satisfactory:

> No denial of due process occurs if Brady material is disclosed to appellees in time for its effective use at trial . . . . The Brady material in this case was information that appellees could use on cross-examination to challenge the credibility of government witnesses. For that type of material, we think appellees' right to a fair trial will be fully protected if disclosure is made the day that the witness testifies. Disclosure at that time will fully allow appellees to effectively use that information to challenge the veracity of the government's witnesses.

713 F.2d at 44 (citations omitted) (emphasis added). Consistent with this view, federal courts routinely have refused to order pretrial production of Giglio materials. See, e.g., Bissell, 954 F. Supp. at 869-70 and cases cited therein; see also United States v. Martino, 648 F.2d 367, 384 (5th Cir. 1981) (en banc) (upholding disclosure of evidence concerning competency of key government witness provided at time he testified); United States v. Rinn, 586 F.2d 113, 119 (9th Cir. 1978); United States v. Litman, 547 F. Supp. 645, 653 (W.D. Pa. 1982); United States v. Frumento, 405 F. Supp. 23, 32 (E.D. Pa. 1975) (refusing to order pretrial disclosure of criminal

24

records); United States v. Mitchell, 372 F. Supp. 1239, 1257 (S.D.N.Y. 1973) (ruling that impeachment materials need not be disclosed until prior to each witness' testimony).

In a case such as this, where there are no special circumstances requiring early disclosure of impeachment material, the only apparent need for pretrial disclosure is to learn the identity of government witnesses through the "back door." Given the detailed Indictment and the extensive discovery, Defendants should easily be able to anticipate what witnesses the government might call. In any event, the Third Circuit and other courts repeatedly have held that requests for discovery cannot properly be used to obtain a list of government witnesses. See Government of the Virgin Islands v. Ventura, 476 F.2d 780, 781 n.1 (3d Cir. 1973); Addonizio, 451 F.2d at 64; United States v. Cole, 449 F.2d 194, 198 (8th Cir. 1971). As one court has noted, "[i]t follows that if the court would not order production of a list of the government's witnesses, it would not order production of their criminal records, if any." United States v. Westmoreland, 41 F.R.D. 419, 427 (S.D. Ind. 1967).

The United States recognizes the interest of the Court and all parties in conducting the trial efficiently and without interruptions, but Defendants request for immediate production of impeachment materials is unreasonable. However, as set forth above, the United States will voluntarily disclose all Giglio material (as well as Jencks Act material, discussed further below) not later than three calendar days prior to each witness's testimony. This procedure should afford defense counsel more than adequate time to prepare for cross-examination and prevent unnecessary delays in the trial. It also will ensure that Defendants' due process rights to a fair and just trial will be satisfied. See Bissell, 954 F. Supp. at 869-780; Higgs, 713 F.2d at 44; United States v. Kubiak, 704 F.2d 1545, 1549-50 (11th Cir. 1983). Accordingly, the Court should deny the Defendants' motion for "immediate" disclosure of impeachment materials.

**VII.    Defendants' Request for Early Disclosure of Jencks Act Material is Without Basis.**

Defendants also seek early disclosure of Jencks Act material, asking the Court to order

that it be disclosed by the United States 75 days prior to the date that the witness in question is

expected to testify – in other words, more than two months before the trial is scheduled to begin.

Such an order would be unprecedented and contrary to established law.  Instead, the United

States intends to provide such material to the defense at least three days before the testimony of

each witness.  Because such early disclosure far exceeds the requirements of the Jencks Act, and

because, for the reasons set forth below, Defendants' request lacks any legal basis, Defendants'

motion for early disclosure of Jencks material should be denied.

The Jencks Act, 18 U.S.C. § 3500, was enacted to set limits on pretrial discovery of

witness statements in criminal cases, and, hence, reflects a legislative determination that a

criminal defendant is entitled to use such statements for impeachment purposes in cross-

examination rather than in pretrial discovery.  See Palermo v. United States, 360 U.S. 343, 349

(1959); United States v. Hill, 976 F.2d 132, 140 (3d Cir. 1992); United States v. Murphy, 569

F.2d 771, 773 (3d Cir. 1978).  Under the express language of the Act, the United States must .

produce statements of government witnesses upon completion of the witnesses' direct

examination.  18 U.S.C. § 3500.  Section 3500 provides that

> [i]n any criminal prosecution brought by the United States, no statement or report in the
> possession of the United States which was made by a government witness or prospective
> government witness (other than the defendant) shall be the subject of subpena [sic]
> discovery, or inspection until said witness has testified on direct examination in the trial
> of the case.

(emphasis added).

The Supreme Court and the Third Circuit have both held that Jencks Act material need

not be produced until after the witness testifies at trial.  Palermo, 360 U.S. at 349; United States

v. Starusko, 729 F.2d 256, 263 (3d Cir. 1984); Murphy, 569 F.2d at 773.  Moreover, the Third

Circuit has held repeatedly that a district court cannot compel the government to disclose

statements of its witnesses before the conclusion of its direct examination and that ordering early

disclosure of such information constitutes an abuse of discretion or even reversible error.  United

States v. Higgs, 713 F.2d 39, 44-45 (3d Cir. 1983); Murphy, 569 F.2d at 773.  Nonetheless,

courts have recognized that although early disclosure cannot be compelled, "early disclosure to

obviate trial interruptions is encouraged."  See, e.g. United States v. Bissell, 954 F. Supp. 841,

870-71 (D.N.J. 1996) (citing Hill, 976 F.2d at 140 and Murphy, 569 F.2d at 773 n.3).  The

proposed voluntary disclosure, three days in advance of a witness's testimony, will afford

defense counsel a more than adequate opportunity to prepare for cross-examination without

delaying the trial.

　　　The defense has a reciprocal duty to produce to the government prior statements of its

witnesses.  See Fed. R. Crim. P. 26.2.  In light of the government's willingness to produce Jencks

material prior to the testimony of its witnesses, the government requests that counsel provide

defense Jencks material similarly in advance of the testimony of defense witnesses.[10]  Failure to

accede to this request may require the government to ask the Court for a delay to study the

defense's material, if any, and to prepare for cross-examination and the possible presentation of a

rebuttal case.

　　　For all of the above reasons, Defendants' request for early disclosure of Jencks material

should be denied.

---

　　　[10]  If Defendants decline to use the same timetable for their required disclosures, the
government requests to be notified prior to trial.

27

## VIII.   Defendants Are Not Entitled to Receive Grand Jury Transcripts.

Defendants seek access to the grand jury transcripts in order to determine whether grand jury abuses led to the indictment and for purposes of impeaching government witnesses. To the extent any grand jury witnesses testify at trial, Defendants are entitled to receive this material under the Jencks Act, and it will be provided to them. Defendants apparently seek the grand jury testimony of non- testifying witnesses as well, however. They are not entitled to it, and their motion should be denied.

The secrecy of grand jury proceedings is protected by Rule 6(e) of the Federal Rules of Criminal Procedure, and while Rule 6(e)(3)(E) permits a court to authorize disclosure of grand jury matters, it may do so only upon a showing of a "particularized need" that outweighs the public interest in grand jury secrecy. In demonstrating a particularized need, "mere speculation that improprieties may have occurred will not suffice." United States v. Budzanoski, 462 F.2d 443, 454 (3d Cir. 1972). Instead, discovery regarding grand jury proceedings is appropriate only "upon a showing of [a] substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury." Id. Defendants request access to the grand jury transcripts in order to "determine whether prosecutorial abuses led to the indictment," "whether the government has [sic] valid ground to indict," and "whether the marital privilege has been violated in any way or respect." (GG Mem. at 60.) However, this falls well short of a showing of "particularized need" and does not begin to establish a "substantial likelihood of gross or prejudicial irregularities." Their motion must be denied.

28

**IX.    Defendants' <u>Henthorn</u> Request Should Be Denied As Moot.**

Defendants seek an order requiring the United States to review the personnel files of all agents expected to testify, citing <u>United States v. Henthorn</u>, 931 F.2d 29, 30 (9th Cir. 1990), and ask that the government submit to the Court any materials as to which it is "uncertain" whether the materials should be disclosed as <u>Giglio</u>. (GG Mem. at 62.)  The government already has a procedure in place according to which agency files pertaining to testifying law enforcement agents will be reviewed by the relevant agency for <u>Giglio</u> material.  The agency will then inform the prosecution team of the results.  Any material that qualifies as <u>Giglio</u> will be disclosed to the defendants, and the government will seek the Court's guidance as necessary if the nature of any particular material is in doubt.  Defendants' motion, therefore, should be denied as moot.  <u>See</u> <u>United States v. Dent</u>, 149 F.3d 180, 191 (3d Cir. 1998) (approving Giglio review procedure described above); <u>United States v. Karriem</u>, 2008 WL 5118200, *11-12 (D.N.J. Dec. 4, 2008) (Ackerman, J.) (refusing to order in camera review of law enforcement personnel files and holding that "[p]rosecutorial review of potential <u>Brady</u> material ordinarily is sufficient absent some exceptional circumstances").

**X.    The United States Will Preserve Agents' Rough Notes.**

Defendants move for an order requiring that the United States retain, preserve and produce agents' rough notes.  The United States is aware of its obligation to preserve and retain the notes of law enforcement agents, pursuant to <u>United States v. Vella</u>, 562 F.2d 275, 276 (3d Cir. 1977).  The United States will therefore direct its agents to preserve any rough notes that may exist.  To the extent that these notes or records are Jencks Act or <u>Giglio</u> materials, they will

be disclosed to Defendants  when all Jencks and <u>Giglio</u> materials are disclosed.  Defendants'
motion should be denied as moot.

XI.     **The United States Will Provide Notice Regarding Rule 404(b) Evidence As Provided
        in the Court's Discovery Order.**

        Defendants move for an order compelling the United States to give notice to Defendants
"immediately" regarding whether it intends to seek the admission of any "other act" evidence
pursuant to Federal Rule of Evidence 404(b).  The Court's Discovery Order requires the
government to provide notice to the Defendants ten days before trial if it intends to seek the
admission of such evidence.  The government will comply with this Order, while specifically
reserving its right to seek to introduce evidence governed by Rule 404(b) during the trial, without
having first given notice to the Defendants, upon a showing of good cause that is satisfactory to
this Court.

        Defendants do not explain why two weeks' notice is insufficient to allow them to prepare
to counter such evidence, if any, or to brief the admissibility of the evidence for the Court.
Moreover, at this point, the government has made no determination as to whether it will seek to
introduce any evidence pursuant to Rule 404(b), and will not make that determination until much
closer to the date of the trial.  Defendants' motion should be denied.

XII.    **A Pretrial <u>James</u> Hearing is Not Necessary to Determine the Admissibility of
        Coconspirator Statements.**

        Defendants also move for a pretrial <u>James</u> hearing to determine the admissibility of
coconspirator statements.  <u>See</u> <u>United States v. James</u>, 576 F.2d 1121, 1127-32 (5th Cir. 1987).
Even in those Circuits that have recognized and approved <u>James</u> hearings, such proceedings are

never mandatory, and the decision whether to hold one is left to the sound discretion of the trial court. See, e.g., United States v. Williams, 264 F.3d 561, 576 (5th Cir. 2001). For the reasons that follow, no such hearing is necessary in this case. The court can, and should, admit any co-conspirator statements conditionally, permitting the government to prove the existence of the conspiracy and the connection of such statements (and thus their admissibility) during the course of the trial, as the Third Circuit has long expressly condoned. See, e.g., United States v. Gambino, 926 F.2d 1355, 1360 (3d Cir. 1991).

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if it was made by a coconspirator "during the course and in furtherance of the conspiracy." In making a factual determination of the admissibility of coconspirator statements under this rule, the Court may consider the statements themselves as well as any other independent evidence of the conspiracy. Bourjaily v. United States, 483 U.S. 171 (1987); United States v. McGlory, 968 F.2d 309, 333-34 (3d Cir. 1992); accord United States v. Ochs, 842 F.2d 515, 528-29 (1st Cir. 1988); United States v. Zambrana, 841 F.2d 1320, 1343-47 (7th Cir. 1988).

In this case, a pretrial James hearing would be an unwarranted waste of judicial resources and would be prejudicial to the government. In any event, such a pretrial hearing is not required under Third Circuit law. See Gambino, 926 F.2d at1360; United States v. DePeri, 778 F.2d 963, 981 (3d Cir. 1985); United States v. Ammar, 714 F.2d 238, 246 (3d Cir. 1983); United States v. Continental Group, Inc., 603 F.2d 444, 456 (3d Cir. 1979). The United States should be permitted to present coconspirator's statements subject to connection, that is, proving by independent evidence that a conspiracy existed and that each Defendant participated in it.

The Third Circuit regularly has upheld the trial court's exercise of discretion in admitting coconspirator statements, without a pretrial hearing, subject to subsequent presentation of the

31

requisite foundation evidence. Gambino, 926 F.2d at 1360-61; Continental Group, 603 F.2d at

456; United States v. Bey, 437 F.2d 188, 191 (3d Cir. 1971); see also United States v. Feliziani,

472 F. Supp. 1037, 1046 (E.D. Pa. 1979), aff'd, 622 F.2d 580 (3d Cir. 1980); United States v.

Sinclair, 433 F. Supp. 1180, 1190-91 (D. Del.), aff'd, 566 F.2d 1171 (3d Cir. 1977). In fact,

there appears to be no case in which the Court has required a James hearing and has ruled that

the connecting-up procedure was in any way improper or an abuse of discretion.

Several factors favor proceeding without a James hearing. Allowing the admission of

coconspirator statements subject to connection is especially appropriate in a conspiracy case with

a "large amount of interrelated testimony." Continental Group, 603 F.2d at 457. A full-blown

James hearing in this case would amount to a preliminary mini-trial outside the presence of the

jury for the sole purpose of determining the admissibility of evidence. The United States would

have to present most of its case-in-chief at the James hearing to show the participation of

declarants in the conspiracy. The Court need not waste judicial resources by holding such a

mini-trial and then hearing the same evidence again before the jury. Such a preliminary mini-

trial would also prejudice the government by forcing it to expose its entire case before the actual

trial and thus would grant Defendants impermissible discovery.

In sum, Defendants' motion for a pretrial hearing on the admissibility of coconspirator

statements should be denied.

### XIII. Defendants Have Not Shown That There is a Need for a Hearing on the Authenticity and Accuracy of Tape-Recorded Evidence.

Citing United States v. Starks, 515 F.2d 112 (3d Cir. 1975), Defendants request a

pretrial hearing to determine the authenticity and accuracy of videotape recordings which

the Government may offer at trial. Starks held that "[w]hen a colorable attack is made as

to a tape's authenticity and accuracy, the burden on those issues shifts to the party offering

the tape, and the better rule requires that party to prove its chain of custody." Id. at 121.

Here, Defendants have not presented a 'colorable attack' as to the authenticity of any tapes

sufficient to shift the burden to the Government and to justify a hearing. Federal Rule of

Evidence 901(a) states that the requirement of authentication "as a condition precedent to

admissibility is satisfied by evidence sufficient to support a finding that the matter in

question is what its proponent claims." In Starks, the Third Circuit did not adopt a

uniform standard for what is a sufficient foundation for tape-recorded evidence, but noted

that a useful exposition of a standard to be applied in laying a foundation for a sound

recording included seven factors: (1) that the recording device was capable of taking the

conversation now offered; (2) that the operator of the device was competent to operate it:

(3) that the recording is authentic and correct; (4) that changes, additions or deletions have

not been made; (5) that the recording has been preserved in a manner that is shown to the

court; (6) that the speakers are identified; (7) that the conversation elicited was made

voluntarily and in good faith, without any kind of inducement. Starks, 515 F.2d at 121.

Moreover, the Third Circuit has explained that:

> the showing of authenticity is not on par with more technical
> evidentiary rules, such as hearsay exceptions, governing admissibility.
> Rather, there need be only a prima facie showing to the court of authenticity,
> not a full argument on admissibility. Once a prima facie case is made, the
> evidence goes to the jury and it is the jury who will ultimately determine the
> authenticity of the evidence, not the court. The only requirement is that there
> has been substantial evidence from which they could infer that the document
> was authentic.

United States v. Reilly, 33 F.3d 1396, 1404 (3d Cir. 1994) (citations omitted).

33

The United States is prepared to lay the necessary foundation at trial for each videotape recording to establish its admissibility. Where, however, as here, Defendants' "attack only consists of a general request for testing the authenticity of the audiotapes possessed by the Government, the authenticity of which must be established by the Government at the time of trial even in the absence of this motion," there is no "need for a Starks hearing, as the Defendant has not presented a 'colorable attack' as to the authenticity of the audiotapes in question so as to shift the burden to the Government to prove the audiotapes' chain of custody." United States v. Flood, 2007 WL 1314612, *9 (W.D.Pa. 2007), citing Starks.

## XIV. Defendants' Motion to Disclose Information Regarding All Informants and Witnesses Should Be Denied.

Defendants move, without factual or legal support, that the Government should be required to identify any "informants," and also provide information about informants and government witnesses which would affect credibility. First, relevant law makes clear that the defendant bears a heavy burden to show a specific need for disclosure of informants. United States v. Jiles, 658 F.2d 194, 197 (3d Cir. 1981), cert. denied, 462 U.S. 1108 (1983); United States v. Moreno, 588 F.2d 490, 494 (5th Cir.), cert. denied, 441 U.S. 947 (1979). Here, the Defendants have not made, and have not even attempted to make, such a showing. Defendants have not even pointed to a part of the record that leads them to believe that there are any "informants" involved in this case.

Second, Defendants' request for information about informants and government witnesses which would affect credibility would appear to constitute what commonly is considered Brady,

34

Giglio, or Jencks Act material. As already discussed at greater length hereinabove, any such information will be timely provided to the defense according to the government's constitutional and statutory obligations, and as provided for in the Court's discovery order.

## XV. The United States Will Advise the Defense of the Evidence it Intends to Introduce at Trial on a Timely Basis.

Defendants request that the United States indicate "exactly what prior testimony given at the bankruptcy proceedings will be used as it pertains to a particular defendant or both." (GG Mem. at 74.) The government will comply with the Court's discovery order, and to the extent the government intends to use recordings, transcripts, and/or translations in its case-in-chief at trial, these items will be among the exhibits made available on or before March 14, 2014. Therefore, Defendants' motion should be denied as moot.

The United States of course may use exhibits that have not previously been marked in order to cross-examine defense witnesses or as part of a rebuttal case, and further reserves its right to mark and disclose additional trial exhibits after March 14, 2014 in the course of its continuing preparation for trial. The government expects that Defendants will reserve their right to do likewise.

## XVI. The Government Submits the Defendants' Motions to Join in Each Other's Motions to the Sound Discretion of the Court.

Defendants both move to join in each other's motions. The Government submits to the sound discretion of the Court the issue of whether and to what extent any relief ordered by the Court applies to each defendant.

## XVII. Defendants Should Not Be Permitted to File Additional Pretrial Motions Without First Obtaining Leave of the Court.

Defendants move for leave to file additional motions until the date of trial.  Because all discovery that the United States is obligated to provide the Defendants has been supplied or made available to them, they are in possession of all of the information upon which they could base a motion.  Defendants have had sufficient time to review this discovery and prepare any motions they deem necessary, and therefore should not be permitted to file additional motions without first obtaining the permission of this Court.

## XVIII. Defendants Are Obligated to Provide Reciprocal Discovery.

The United States previously has requested, and now seeks an order compelling, the production of reciprocal discovery by the Defendants.  The right of the United States to reciprocal discovery from Defendants is firmly established in Rule 16(b) of the Federal Rules of Criminal Procedure.  Under the clear language of this rule, courts uniformly have allowed reciprocal discovery.  See, e.g., United States v. Bump, 605 F.2d 548, 551-52 (10th Cir. 1979) (requiring reciprocal disclosure over defendant's objection that it would violate his constitutional rights); United States v. Sherman, 426 F. Supp. 85, 93 (S.D.N.Y. 1976).

To date, the United States has not received any reciprocal discovery from the Defendants.  Because discovery has been made available to the Defendants, the United States is entitled, pretrial, to reciprocal discovery under Rule 16(b) and the Court should direct disclosure of all discoverable information forthwith. Specifically, pursuant to Rule 16(b)(1)(A), the government must be permitted to inspect and to copy photographs, books, papers, documents, data,

photographs, tangible objects, buildings or places, or copies or portions of any of these items if such items are within the Defendants' possession, custody, or control and the Defendants intend to use the items in Defendants' case-in-chief at trial, and the government respectfully requests that the Court so order.

## CONCLUSION

The United States submits that each of Defendants' pretrial motions must be denied; and that the Court should enter an order compelling Defendants to immediately provide reciprocal discovery pursuant to Fed. R. Crim. P. 16(b).

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney

By:     s/Jonathan W. Romankow
JONATHAN W. ROMANKOW
RACHAEL A. HONIG
Assistant U.S. Attorneys

DATED:      January 29, 2014
Newark, New Jersey