UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GIUSEPPE GIUDICE,<br>a/k/a "JOE GIUDICE"<br><br>AND<br><br>TERESA GIUDICE<br><br>Defendants. | HON. ESTHER SALAS, U.S.D.J.<br><br>Criminal No. 13-495 (ES)<br><br>Hearing Date: April 9, 2014<br>9:30 A.M. |

---

**REPLY BRIEF FOR DEFENDANT TERESA GIUDICE IN SUPPORT OF HER PRETRIAL MOTIONS**

---

**KROVATIN KLINGEMAN LLC**
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777
Attorneys for Defendant
Teresa Giudice

**On the Brief:**

HENRY E. KLINGEMAN, ESQ.
ERNESTO CERIMELE, ESQ.

# Table of Contents

Page No.

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I

TERESA GIUDICE MUST BE SEVERED FROM JOE GIUDICE TO PRESERVE HER CONSTITUTIONAL RIGHT TO TESTIFY ON HER OWN BEHALF . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT II

SEVERANCE OF COUNTS 1-13 (MORTGAGE FRAUD) AND COUNTS 14-36 (BANKRUPTCY FRAUD) WILL BE REQUIRED TO PREVENT UNDUE PREJUDICE TO THE DEFENDANTS AND CONFUSION TO THE JURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT III

THE COURT SHOULD DIRECT THE PROSECUTON TO FILE A BILL OF PARTICULARS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT IV

THE COURT SHOULD ORDER THE PROSECUTION TO PRODUCE IMMEDIATELY ALL BRADY MATERIALS . . . . . . . . . . . . . . . . . . . . . . 10

POINT V

DEFENDANT TERESA GIUDICE WILL RELY ON ARGUMENTS MADE AT ORAL ARGUMENT AND IN HER MEMORANDUM IN SUPPORT OF HER PRETRIAL MOTIONS . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# Table of Authorities

**Page No.**

Cases Cited

Kyles v. Whitley,
514 U.S. 419, 430 (1995) .................................. 14
In re Malfitano,
633 F.2d 276, 278 (3d Cir. 1980) ............................ 5
See in re Grand Jury,
11 F. 3d. 1083, 1086 (3d Cir. 1997) ......................... 5
Silva v. Brown,
416 F.3d 980, 990 (9th Cir. 2005) ........................... 11
Trammel v. United States,
445 U.S. 40, 53 (1980) ...................................... 5
United States v. Ali,
2005 WL 697482 .............................................. 2
United States v. Artates,
2012 WL 6597752 (D. Hi. Dec. 18, 2012) ...................... 1,4
United States v. Bortnovsky,
820 F.2d 572, 575 (2d Cir. 1987) ............................ 9
United States v. Dobson,
CRIM. 02-616-06, 2003 WL 22427984(E.D. Pa. Aug. 18, 2003) 1,2,5
United States v. Ferrer,
2008 WL 4890034, *4 (M.D. Pa. Nov. 12, 2008) ................ 3,4
United States v. Freeman
694 F. Supp. 190 (E.D. Va. 1988) ............................ 1
United States v. Galvan,
2006, WL 1659610(D. Colo. June 8, 2006) ..................... 1
United States v. Leggett,
162 F.3d 237, 245 (3d Cir. 1998) ............................ 5
United States v. Manfredi,
628 F. Supp. 2d 608, 647-650 (W.D. Pa.2009) ................. 3
United States v. McGill,
964 F. 2d 222, 242 (3d Cir. 1992) ........................... 6
United States v. Rodriguez,
496 F.3d 221, 226 (2d Cir. 2007) ............................ 13
United States v. Rosa,
891 F.2d 1063, 1066 (3d cir. 1989) .......................... 8

United States v. Sasso,
78 F.R.D. 292 (S.D.N.Y. 1977) .............................. 1
United States v. Service Deli,
151 F. 3d 938, 942-44 (9th Cir. 1998) ...................... 14
United States v. Voigt,
89 F. 3d 1050, 1094 (3d Cir. 1996) ......................... 5
Will v. United States,
389 U.S. 90, 99 (1967) ..................................... 8
Wiggins v. United States,
386 A.2d 1171, 1178 (D.C. 1978) ............................ 14
Zafiro v. United States,
506 U.S. 534, 539 (1993) ................................... 5

Rules Cited

Fed. R. Crim. P. 7 ......................................... 8
Fed. R. Crim. P. 7(f) ...................................... 8
Fed. R. Crim. P. 14 ........................................ 4,7
Fed. R. Crim. P. 14(a) ..................................... 4
Rule 8 ..................................................... 7
Rule 8(a) .................................................. 7
Rule 8(b) .................................................. 4

# ARGUMENT

## I. TERESA GIUDICE MUST BE SEVERED FROM JOE GIUDICE TO PRESERVE HER CONSTITUTIONAL RIGHT TO TESTIFY ON HER OWN BEHALF

As set forth in Teresa's Memorandum in support of her pretrial motions, the Court should sever the trials of Teresa and Joe Giudice to protect her two basic trial rights. Severing the trials is justified to protect Teresa's rights to: 1) testify on her own behalf, and 2) not testify against her husband. United States v. Dobson, CRIM. 02-616-06, 2003 WL 22427984 (E.D. Pa. Aug. 18, 2003). Teresa will be prevented from the protection of both rights if she has to choose between them. Id. at 2.

In opposing severance of the trials, the Government disregards the holdings of courts within the Third Circuit in favor of district court decisions elsewhere. *Government Opposition* at p. 4, citing United States v. Artates, 2012 WL 6597752 (D. Hi. Dec. 18, 2012); United States v. Galvan, 2006 WL 1659610 (D. Colo. June 8, 2006); United States v. Freeman, 694 F. Supp. 190 (E,D, Va. 1988); United States v. Sasso, 78 F.R.D. 292 (S.D.N.Y. 1977).

*This Circuit* does not uniformly deny severance of trials for husband and wife co-conspirators. In fact, most courts in *this Circuit* favor severance in circumstances such as this. As cited previously in Teresa's Memorandum in support of her

pretrial motions, when such a conflict of rights occurs, courts within this Circuit resolve the problem by severing the trials of the spouses. See e.g. Dobson, *supra*.

For example, in United States v. Ali, a defendant and her husband were charged in approximately thirty counts of a superseding indictment with violations of RICO, mail fraud, wire fraud, and tax evasion. United States v. Ali, 2005 WL 697482. The defendant moved to sever the trial from her husband, asserting that she wished to testify on her own behalf at trial, but that her testimony would inculpate her husband. Id. The Court held:

> [I]f Defendant were tried alongside her husband, she would be forced to choose between two basic, fundamental rights. Requiring her to so compromise a specific trial right would be manifestly unfair. In the interest of justice, the appropriate remedy is to sever the trials of Defendant and her husband. Id.

As the courts in Dobson and Ali correctly held, if a spouse such as Teresa chose to testify as to her innocence, it may inculpate her husband. Thus, she is placed in the position of choosing to testify on her own behalf, or not testifying at all. This result is improper, and warrants severance of the trial. Additionally, should the Court proceed with a joint trial, Joe will likely invoke his Fifth Amendment constitutional right and forego testifying, despite likely exculpatory testimony that he

and others, not Teresa, signed various loan documents. If the trials were severed, Joe could testify in Teresa's defense. This scenario fits squarely within the considerations set forth by the courts cited above.

In support of its opposition, the Government relies on two cases within this district which are easily distinguishable: United States v. Manfredi, 628 F. Supp. 2d 608, 647-650 (W.D. Pa. 2009) and United States v. Ferrer, 2008 WL 4890034, *4 (M.D. Pa. Nov. 12, 2008). In Manfredi, the Court denied severance based on entirely unrelated reasons and concerns. Id. at 644. ("Having found that there is no serious risk that Mrs. Manfredi's rights under the Confrontation Clause would be violated by introduction of the contents of the interview memorandum at issue, with a proper limiting instruction, severance of the defendants is not warranted.").

The only other case within this Circuit cited by the Government did not state that severance is uniformly improper, as the Government suggests. See Ferrer, *supra*. In fact, the District Court in Ferrer held quite the opposite. In Ferrer, the Court held, "[W]e reject[] the bright-line rule implied in Dobson in favor of a fact sensitive inquiry focused on whether failure to sever creates a serious risk that one of [Defendants] trial rights will be compromised." (emphasis added). Thus, the Ferrer court focused on whether the Defendant wife's testimony

regarding a drug trafficking conspiracy would be incriminating to her husband. The Ferrer court did not believe the testimony would have incriminated her husband, and denied severance. Even using the same, fact specific inquiry set forth in Ferrer, the Defendant in the case at bar should be severed. The Government's failure to even acknowledge the Ferrer analysis in its opposition is telling.

The Government also relies largely on the case United States v. Artates --out of the District of Hawaii no less-- in support of its opposition. The Hawaiian District Court in Artates denied severance as it did not find "the right not to testify against one's spouse" to be a specific constitutional right. Artates, *supra*, at *3. This reasoning is flawed, and is largely not followed in the Third Circuit.

Rule 14 of the Federal Rules of Criminal Procedure permits a court to sever defendants' trials "[if] the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government." Fed.R.Crim.P. 14(a). (emphasis added). When defendants have been properly joined under Rule 8(b), "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

Zafiro v. United States, 506 U.S. 534, 539, (1993); United States v. Voigt, 89 F.3d 1050, 1094 (3d Cir.1996) (emphasis added).

It is well established that the right to testify on one's own behalf at a criminal trial is a fundamental constitutional right. See United States v. Leggett, 162 F.3d 237, 245 (3d Cir.1998). Undoubtedly, Teresa's constitutional right to testify on her own behalf is compromised by the joinder. In addition, the privilege afforded a witness not to testify adversely against his spouse is absolute, See In re Grand Jury, 111 F.3d 1083, 1086 (3d Cir.1997), even "where the spouses have been partners in crime." In re Malfitano, 633 F.2d 276 278 (3d Cir.1980); see also Trammel v. United States, 445 U.S. 40, 53 (1980). Even if the Court does not find that a specific trial right is compromised by the joinder warranting severance under the Dobson approach, it is undoubtable that Teresa would be prejudiced by the joinder, further warranting severance pursuant to Rule 14.

## II. Severance of Counts 1-13 (Mortgage Fraud) and Counts 14-36 (Bankruptcy Fraud) Will Be Required to Prevent Undue Prejudice to the Defendants and Confusion to the Jury

The Government opposes Defendants' motions to sever various Counts in the indictment, arguing that a "logical relationship"

exists pursuant to United States v. McGill, 964 F.2d 222, 242 (3d Cir. 1992).

The McGill court held that that the fact that one illegal activity provides the impetus for the other illegal activity is sufficient to constitute a common scheme for joinder purposes. Id. at 964. The Government contends that "Defendants fraudulently incurred large amounts of loan debt by making false statements on loan applications and supporting documents…then attempted to fraudulently discharge that debt by making additional false statement during the bankruptcy process." This statement is false, and entirely misrepresents the evidence produced in this case to date.

The evidence at trial will show that almost all of the loans acquired by the Giudices had been paid off, long before the bankruptcy petition was filed. Specifically, the evidence will show the following:

- **Loan 1: 81 Marshall: HomeComings:** September 2001: *Paid off prior to bankruptcy;*
- **Loan 2: 58-60 Highland: Eastern American:** June 2004: *Paid off prior to bankruptcy;*
- **Loan 3: 66 Belmont: Alterna:** March 2005: *Paid off prior to bankruptcy;*
- **Loan 4: 105-197 Governor: Washington Mutual:** July 2005: *Paid off prior to bankruptcy;*

- **Loan 5: 12 Wauchaw Road: Park Avenue:** November 2005: *Paid off prior to bankruptcy;*

In addition to the above loans, there also exists 1) two Wachovia Lines of credit; and 2) the Giudice's home address. However, Teresa had absolutely no involvement with the acquisition of the Wachovia lines of credit, which are not in her name. The only remaining property is the home address, which is the Giudice's primary residence. The mortgage on the home address is currently being paid monthly.

Thus, the Government's attempt to categorize the loan application/bank fraud counts and the bankruptcy fraud counts as one, single "transaction" is clearly improper. There is no comparison or relation between the two sets of counts except the married defendants. Each set of counts refer to completely unrelated and distinct events during completely different time periods. Indeed, the evidence and witnesses will show that these sets of counts are not at all part of a "common scheme or plan" to defraud. Consequently, due to the risk of juror confusion and unfair prejudice pursuant to R. 8 and R. 14, the two sets of counts must be severed.

## III. THE COURT SHOULD DIRECT THE PROSECUTION TO FILE A BILL OF PARTICULARS

The Government contends that it is not required to file a bill of particulars because its indictment is sufficient and

"the Defendants can readily determine all of the information they seek without the need for a bill of particulars." However, this reasoning is flawed and insufficient. The Government should not be permitted to subvert their obligation pursuant to Fed. R. Crim. P. 7(f).

Rule 7(f) is designed "to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989) (quoting Fed. R. Crim. P. 7 Advisory Committee's Note to 1966 amendment). A motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense. Will v. United States, 389 U.S. 90, 99 (1967).

Here, the Government opposes Teresa's Motion for a bill of particulars, in part, because it has already provided access to discovery. Indeed, the Government has given the Defense "access" to an entire room full of bankers boxes and redwells - requiring the Defense to determine what is relevant and what is not.

The fact that the Government has made available to defense counsel the voluminous documentary discovery accumulated in connection with this case does not obviate the need for a bill of particulars. Teresa's motion does not seek to determine

"how" the Government intends to prove its case, but rather "what" the government intends to prove. It is the very extensive nature of the discovery provided that gives rise to Teresa's need for a more specific statement of the charges. See United States v. Bortnovsky, 820 F.2d 572, 575 (2d Cir. 1987)("The government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified...")

As stated more fully in Teresa's Memorandum in support of her Pretrial Motions, the Indictment repeatedly uses vague and amorphous words and phrases, but fails to provide additional detail to allow Teresa to defend herself against these allegations. In fact, the Defense has accessed and reviewed the Government's discovery in the U.S. Attorney's Office on many occasions, and still cannot determine what the basis is for many of the allegations set forth in the Indictment.

Accordingly, the Indictment is woefully deficient. For example, Count 23 of the Indictment alleges that on April 23, 2010 during her 403 examination, Teresa made false oaths "about her income," without more. The Defense has a right to know what the oath was and what "about her income" was false.

Similarly, Count 26 alleges that Teresa made false oaths about the "Rental Property" and "income from Rental Property."

The Defense has a right to know what the oath was and what about the "rental property" was false.

Additionally, the indictment states that other co-conspirators were involved in the wrongful conduct, but does not state which other co-conspirators. It provides that the wrongful conduct took place in other states, but does not enumerate which other states. It states that various "other" documents were submitted to banks and "other" entities causing, in part, the basis for the bank and loan application fraud. However, the Indictment does not state which other documents were submitted to which other entities and how they were involved in the fraud.

As a result, Teresa Giudice respectfully moves that the Government be ordered to produce the information referenced in her Pretrial Motions.

## IV.  THE COURT SHOULD ORDER THE PROSECUTION TO PRODUCE IMMEDIATELY ALL BRADY MATERIALS

The Government has opposed Defendants' request for an Order to produce all Brady material as moot. It has further stated that "the United States already has provided all Brady material in its possession, and represents to the Court that it is aware of, and will abide by, its continuing obligation of disclosure." *Government Opposition* at p. 23.

The Defense is familiar with the Government's representation that "no Brady" material exists, because this representation has been made to the Defense on numerous occasions. It is *only* when the Defense has presented the Government and/or Court with proof that exculpatory material exists that the Government will acknowledge its existence.

Courts have held that "no Brady" responses coupled with subsequent Brady disclosures, is evidence that the government is not carefully reviewing the information in its possession. See Silva v. Brown, 416 F.3d 980, 990 (9th Cir. 2005) (Government's efforts to withhold and suppress Brady material demonstrates its materiality). Failing to do so requires intervention and scrutiny by the Court. Id. As such, Teresa respectfully requests that Your Honor require the Government to review documents and information in its possession for Brady material and immediately produce same to the defense. The Government's continuous failure to do so prejudices Teresa.

As stated, to date, the Government has failed to meet its duty to provide all evidence favorable to the defense. In doing so, it has also failed to abide by Your Honor's August 14th Order, which required the Government to have provided:

> "Any material evidence favorable to the defense related to issues of guilt, lack of guilt or punishment which is known or that by the exercise of due diligence may become known

> to the attorney for the United States, within the purview of Brady v. Maryland and its progeny."

As set forth in depth in Teresa's Memorandum in support of her pretrial motions, the Government had only once acknowledged the existence of Brady material, and only after Defendant demanded disclosure of same.[1] Nonetheless, the Defense has provided the Court and Government with several other examples of Brady material which should have been disclosed. It was not until January 28th, 2014, *the date before the Government submitted its opposition to Teresa's pretrial motions* that additional Brady material was disclosed.

Specifically, on January 28th, 2014, the Government provided information regarding the Washington Mutual loan (the loan application causing the basis for the superseding indictment). The loan officer for that transaction was Lisa Peloso. The loan application stated that Ms. Peloso had a face-to-face interview with Teresa prior to submission. On January 29th, 2014, the Government for the first time provided a summary of its

---

[1] Upon review of pertinent discovery, Teresa challenged the Government's failure to disclose Brady material in an October 11, 2013 correspondence, which demanded, in part:

> immediate disclosure of any and all Brady material, including, but not limited to: 1) any statements by codefendants and/or witnesses that Teresa Giudice did not have knowledge of real estate purchases, loan applications, and bankruptcy proceedings; 2) any other statements by codefendants and/or witnesses that Teresa Giudice did not sign loan applications, HUD-1 statements, or other documents relevant to the Government's prosecution of this case; 3) any admissions (verbal or otherwise) by codefendants and/or witnesses; and 4) any agreements with witnesses not to prosecute and/or offer leniency in exchange for the witnesses' testimony.

interview with Ms. Peloso, stating that Ms. Peloso had advised the Government that in connection with the $261,250 loan which Teresa Giudice obtained from Washington Mutual Bank in July 2005, Ms. Peloso did not, in fact, conduct an interview with Teresa, nor did she even interact with Teresa Giudice prior to closing the loan.

The Defense has reason to believe that other evidence exists which is similar to that provided by Ms. Peloso. The failure to provide the Defense with same is improper, and in violation of the Government's duties under Your Honor's order. Should the Government continue to deny Teresa Brady material, the Defense reserves its right to move to dismiss the Indictment at a later date.

Additionally, on the two occasions that the Government *has* provided Brady material, it has only provided short, inadequate, and evasive summaries of the information it has obtained. At a minimum, the Government is required to make Brady disclosures that are "sufficiently specific and complete" to permit effective use by the defense. United States v. Rodriguez, 496 F.3d 221, 226 (2d Cir. 2007). It is simply inevitable that when documents, recordings, or statements are summarized, detail and nuance are lost. Teresa cannot realistically be expected to use the Government's summaries at trial in any fashion. Teresa

has been and will be prejudiced as she will be precluded from exposing the jury to the witnesses' own words. Kyles v. Whitley, 514 U.S. 419, 430 (1995); See also Wiggins v. United States, 386 A.2d 1171, 1178 (D.C. 1978) (Ferren, J. concurring) ("[t]he fact that the government told [the defense] the names of [] witnesses and summarized their testimony did not necessarily meet defendant's needs. . . . we [cannot] assume that the prosecutor summarized the [] statements with every detail that might have been relevant to defense counsel's preparation as counsel viewed the case."); United States v. Service Deli, 151 F.3d 938, 942-44 (9th Cir. 1998) (Brady violation had been committed when the Government produced mere summaries of interviews instead of the actual interview notes).

It is for this very reason that the United States Attorney General's Office issued a Memorandum acknowledging that production of the evidence in its original form is best. The Government's policy correctly assumes that the only way for the Government to provide adequate Brady disclosures is to provide the Defense with "information in its original form." DAG Guidance Memo Step 3.C. This includes a thorough review of the following:

1. The investigative agency's files including any emails/electronic documents. DAG Guidance Memo, Step 1.B.1. 25;

2. All files relating to a confidential informant, not just the portion relating to the current case, including all proffer, immunity, and other agreements, validation assessments, payment information, and other potential witness impeachment information. Id. at Step 1.B.2.

3. All evidence and information gathered during the investigation, including but not limited to anything obtained during searches or via subpoenas. Id. at Step 1.B.3

4. All substantive case-related communications including communications "1) among prosecutors and/or agents, (2) between prosecutors and/or agents and witnesses and/or victims, and (3) between victim-witness coordinators and witnesses and/or victims." Id. at Step 1.B.5.

5. Any potential Giglio information relating to law enforcement witnesses. Id. at Step 1.B.6; see also USAM § 9-5.100.1 (requiring "[e]ach investigative agency employee . . . to inform prosecutors with whom they work of potential impeachment information as early as possible. Id.

6. Any information obtained in witness interviews, or trial preparation meetings with witnesses. Id. at Step 1.B. 8.

As stated, the Government's contention that Teresa's argument related to Brady material is "moot" is insufficient, especially in light of the fact that the prosecution produced Brady material on the day before it submitted its opposition. The Government's failure to produce Brady material is continuous, and the Court's intervention is required.

## V. DEFENDANT TERESA GIUDICE WILL RELY ON ARGUMENTS MADE AT ORAL ARGUMENT AND IN HER MEMORANDUM IN SUPPORT OF HER PRETRIAL MOTIONS

In support of her pretrial motions, and in response to the Government's opposition, Teresa Giudice respectfully relies on all other arguments made in her initial Memorandum in support of her pretrial motions. Teresa will also seek to support her motions during oral argument.

## CONCLUSION

For the foregoing reasons, the defendant Teresa Giudice respectfully requests that the Court grant her pre-trial motions in their entirety.

Respectfully submitted,

/s/ Ernesto Cerimele, Esq.
ERNESTO CERIMELE, ESQ.
*Attorney for Defendant*
*Teresa Giudice*

Dated: February 4, 2014